[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15208

_____

D.C. Docket Nos. 0:10-cv-61835-KAM,
0:05-cr-60160-KAM-10

MARCUS RIVERS,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 5, 2015)

Before ED CARNES, Chief Judge, RESTANI,[*] Judge, and ROBRENO,[**] District
Judge.

---

[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by
designation.

[**] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

ROBRENO, District Judge:

This appeal arises out of a claim of ineffective assistance of counsel. After his 2007 conviction for conspiring to possess with intent to distribute, Marcus Rivers filed a motion to vacate his sentence under 28 U.S.C. § 2255, alleging that his trial attorney — who died before Rivers filed his § 2255 petition — was constitutionally ineffective in several ways. At an evidentiary hearing on Rivers's claims, counsel for Rivers's codefendant testified, in relevant part, about conversations he had with Rivers's lawyer before the trial. Over Rivers's objection, the district court permitted that testimony under Federal Rule of Evidence 807, the residual exception to the hearsay rules. After the district court denied Rivers's § 2255 motion, Rivers was granted a certificate of appealability on the question of whether that hearsay testimony was properly admitted under Rule 807, and now brings this appeal.

We hold that the statements admitted under Rule 807 lacked the "circumstantial guarantees of trustworthiness" required by the rule, and so it was error for the district court to admit them. However, we will not reverse the district court's denial of Rivers's § 2255 motion because, even after excising the improperly admitted testimony of his codefendant's counsel, Rivers has failed to meet his burden to prove the claims in his petition. Therefore, the Rule 807 error was harmless and we affirm the district court's denial of Rivers's § 2255 motion.

2

I.

In 2006, Marcus Rivers and ten other defendants were charged by superseding indictment with (1) conspiring to import into the United States at least five kilograms of a substance containing a detectable amount of cocaine and a substance containing a detectable amount of marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 952(a), 960(b)(1)(B) and (b)(4), and 963 (Count 1); and (2) conspiring to possess with intent to distribute at least five kilograms of a substance containing a detectable amount of cocaine and a substance containing a detectable amount of marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(D), and 846 (Count 2).

Ana Maria Jhones was appointed as Rivers's attorney. In a motion for continuance of trial, Jhones indicated that she had been unable to review Rivers's case with him due to his financial inability to travel to her office, and that he had not participated "in ANY communication" with her regarding his defense. Jhones later filed a motion to withdraw as Rivers's counsel due to irreconcilable differences; the magistrate judge granted the motion and ordered the clerk to appoint new counsel. On April 10, 2007, the court appointed Brian R. McComb to represent Rivers.

3

The court held a May 23, 2007, hearing to determine the admissibility of wiretap evidence against Rivers and several other codefendants, including Thomas Jones. Neither Rivers nor Jones was present at the hearing.

Trial began two weeks later. At the close of the government's case, the court granted Rivers a judgment of acquittal as to Count 1, and at the conclusion of trial, the jury convicted Rivers of Count 2. The court sentenced Rivers to 180 months' imprisonment and 5 years' supervised release. Meanwhile, as Rivers's case was proceeding through direct appeal under newly appointed counsel, McComb died. McComb's widow has indicated that she is unable to locate any of his case files.

After the rejection of his direct appeal, Rivers filed a timely motion to vacate his sentence under 28 U.S.C. § 2255. This motion alleged in relevant part[1] that his trial counsel, McComb, had provided ineffective assistance of counsel in two ways. First, he had failed to review the government's evidence with Rivers prior to trial ("Ground 3"). According to his motion, had Rivers understood the weight of the government's evidence against him, he would have entered a guilty plea rather than proceeding to trial and thus would have been eligible for an acceptance-of-responsibility reduction and the safety valve. Therefore, Rivers claimed, he had

---

[1]    Rivers also alleged originally that McComb was ineffective by failing to investigate and move to suppress wiretap evidence and by failing to move for a directed verdict regarding a portion of Count 2. Those claims are outside the scope of the certificate of appealability ("COA") and, as such, are not at issue in this appeal. See Murray v. United States, 145 F.3d 1249, 1250–51 (11th Cir. 1998) (limiting appellate review to the issues specified in the COA for appeals brought by unsuccessful §§ 2254 and 2255 petitioners).

4

been prejudiced by McComb's performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Second, McComb had failed to advise Rivers about whether he should plead guilty or proceed to trial ("Ground 4"). Here, Rivers alleged that McComb had in fact told him that the government had no evidence against him, and that McComb failed both to develop an opinion about whether Rivers should plead guilty and to express that opinion to him. Had McComb advised him to plead, Rivers alleged, he would have pled guilty and received the benefit of a three-level reduction for acceptance of responsibility, and therefore the failure to so advise him rendered his representation constitutionally ineffective.

The magistrate judge held an evidentiary hearing on August 25, 2011, on Rivers's ineffective assistance claims. Rivers testified that, after a brief introduction when McComb became his lawyer, he only ever spoke with McComb again the day before trial, when McComb instructed him on the phone to come to court the following day. Rivers and McComb met for the first time at the courthouse the day they began jury selection. Rivers testified that he and McComb had never discussed any of the following: evidence, discovery materials, motions, witnesses, exhibits, defense witnesses, defense exhibits, expert witnesses, the Sentencing Guidelines, his criminal record, the indictment, the jury instructions, the elements of the charges against him, or the wiretap recordings. He also testified that he never spoke with McComb about the possibility of pleading guilty or

5

whether he should have done so. At the same hearing, the government admitted that it had nothing with which to refute Rivers's testimony about his alleged lack of communication with McComb.

The magistrate judge issued a report and recommendation concluding that, assuming Rivers could prove deficiency, he had not established that he had been prejudiced by counsel's alleged deficiencies.[2] Rivers objected, arguing that he had shown that with proper advice, he would have pled guilty, accepted responsibility, and sought a more lenient sentence from the court. The district court agreed with Rivers, finding that there was a reasonable probability that but for counsel's alleged deficiency, the sentence would have been reduced. Therefore, the court indicated that Rivers was entitled to § 2255 relief if he could satisfy the deficiency prong of Strickland, and remanded the matter back to the magistrate judge for consideration of deficient performance.

On remand, the magistrate judge entered an order requiring the government to respond to the district court's concerns and address both prongs of Strickland. In response, the government submitted a series of emails between the government, McComb, and Valentin Rodriguez, counsel for codefendant Jones, in which the

---

[2]    See Strickland, 466 U.S. at 687 ("A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.").

6

government had requested the defendants to enter into several evidentiary stipulations prior to trial. In response, Rodriguez had stated that he was meeting with McComb to discuss the stipulation issues, and McComb had stated that he was "trying to get [Rivers] to accept a plea in this matter."

In the resulting report and recommendation, the magistrate judge determined that Rivers's testimony at the evidentiary hearing was credible. Accordingly, the magistrate judge concluded that McComb had not conveyed a plea offer to Rivers or discussed with him the relative advantages of one, and therefore that McComb had provided deficient performance. The government objected, requesting that the district court reopen the evidentiary hearing[3] to allow relevant testimony that would counter Rivers's testimony, which the court did.

At the second evidentiary hearing, which took place on August 31, 2012, Rivers chose not to present any additional testimony and stated that he intended to rely on his testimony from the earlier evidentiary hearing before the magistrate judge. The district court said that it wanted Rivers to testify again so it could make a credibility finding based on testimony the district court judge personally observed, but Rivers declined and stated that the district court could determine his credibility based on the transcript of his previous testimony. The district court then

---

[3]    Under 28 U.S.C. § 636(b)(1), a district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. . . . The judge may also receive further evidence . . . ."

7

asked for Rivers's consent to make credibility determinations based on his review of the transcript, "in conjunction with all the other evidence," and counsel replied, "Absolutely. You're the Judge."

The government then called Rodriguez to testify. According to his testimony, Rodriguez met with Jones, McComb, and Rivers at the courthouse before a May 23, 2007, hearing on the admissibility of wiretap evidence. Rodriguez described that day as "a day to get everything organized, in a way, and to discuss the case," because as he remembered it, all the defendants were present at that hearing. He stated that it was "one of the first real intense meetings that [they] had regarding the plea agreements," and that he discussed plea agreements with both McComb and Rivers at that meeting. Rodriguez also testified that he tried to convince Jones to plead guilty, but that Rivers repeatedly instructed Jones not to accept a plea, no matter what.

The government asked Rodriguez if he knew when, relative to that meeting, McComb had communicated with Rivers about plea agreements, and Rivers objected based on hearsay. The district court overruled the objection under Federal Rule of Evidence 807, the residual exception to the hearsay rules, concluding that the hearsay statements had the required "circumstantial guarantees of trustworthiness":

> I believe Mr. Rodriguez, as an officer of the Court, would not proffer any false testimony to me about what occurred. This is a meeting that

8

was very critical to his client, and his communications with Mr. McComb relative to Mr. Rivers pleading guilty were very critical to his client. What was said in those types of communications, those conversations, have circumstantial guarantees of trustworthiness.

The district court also determined that the statements satisfied the other requirements of Rule 807 because they were offered into evidence as material facts, they were more probative on the point for which they were offered than any other evidence the government could obtain through reasonable efforts, and in light of the fact that McComb was dead and unable to testify in this matter, it would serve the interests of justice for the court to have this evidence available to it.

Responding to the government's question, Rodriguez testified that he had spoken with McComb about his conversations with Rivers regarding the plea agreement offered by the government, and that McComb told him that he had provided the discovery materials to Rivers, repeatedly reviewed the evidence with him, and discussed plea agreements with him. He also testified that McComb stated that he was sorry, but Rivers was not going to plead guilty.

When asked if he could be mistaken as to whether Rivers and Jones were at the suppression hearing, Rodriguez testified that he remembered being in the room with Rivers, McComb, and Jones. The court commented that the record indicated that the only defendant present at the suppression hearing was a different codefendant, and Rodriguez noted that he could "see it like yesterday, the meeting in the room at a pretrial hearing."

9

On cross-examination, Rodriguez concluded — after looking over the court minutes and transcript from the May 23, 2007, hearing — that the court had waived the defendants' presence from the suppression hearing. He speculated that the meeting he remembered might have occurred before a different hearing, but reemphasized that the meeting did happen — even noting that he specifically remembered the red chairs in the room.

Ultimately, the district court denied Rivers's § 2255 motion. In its order, the court stated that it had overruled the hearsay objection to Rodriguez's testimony concerning his conversations with McComb based on Rule 807 and, in addition to the reasons provided at the evidentiary hearing, found in a footnote that McComb's "statements had equivalent circumstantial guarantees of trustworthiness because the statements" were made to a codefendant's counsel and "[f]rank and forthright communication between counsel for co-defendants is expected when they are planning pretrial strategy." The court found Rodriguez's testimony "credible and consistent with common sense," and Rivers's testimony "incredible and perjurious," because it "strains credulity for this Court to believe that an experienced and competent criminal defense attorney such as Mr. McComb would not have fully discussed the discovery material and a government plea offer with his client before trial." Accordingly, the district court found that Rivers did receive

10

effective representation, denied the § 2255 motion, and declined to grant a certificate of appealability ("COA").

Rivers filed a timely notice of appeal and this Court granted him a COA on one issue: whether the district court impermissibly considered and relied upon the hearsay testimony of Valentin Rodriguez, pursuant to Federal Rule of Evidence 807, when it concluded that Rivers's counsel was not constitutionally deficient for allegedly failing to advise Rivers about the government's discovery materials and plea offer.

## II.

Federal Rule of Evidence 807 — the residual exception to the hearsay rules — reads in relevant part[4]:

> (a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>> (1) the statement has equivalent circumstantial guarantees of trustworthiness;

---

[4]    Rule 807 also contains a notice requirement:

(b) Notice. The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

The parties do not address this issue, but it is clear from the record that Rivers was aware of the possibility of Rodriguez's testimony: Rivers filed a motion on August 13, 2012, noting that the government had announced that it may call Rodriguez as a witness and moving for his testimony to be inadmissible under attorney-client privilege. It is not clear whether Rivers was aware of the particulars of Rodriguez's testimony — specifically, the fact that Rodriguez planned to testify about McComb's statements to him.

11

(2) it is offered as evidence of a material fact;

(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4) admitting it will best serve the purposes of these rules and the interests of justice.

"Congress intended the residual hearsay exception to be used very rarely, and only in exceptional circumstances," United Techs. Corp. v. Mazer, 556 F.3d 1260, 1279 (11th Cir. 2009) (quoting United States v. Ingram, 501 F.3d 963, 967 (8th Cir. 2007), vacated on other grounds, 555 U.S. 1132 (2009)) (internal quotation marks omitted), and it "appl[ies] only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present," id. (alteration in original) (quoting United States v. Wright, 363 F.3d 237, 245 (3d Cir. 2004)) (internal quotation marks omitted).

A district court's decision to admit hearsay evidence pursuant to Rule 807 is reviewed for an abuse of discretion. See United States v. Rodriguez, 218 F.3d 1243, 1246 (11th Cir. 2000). "An abuse of discretion occurs where 'the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" United States v. Jayyousi, 657 F. 3d 1085, 1113 (11th Cir. 2011) (quoting United States v. Westry, 524 F.3d 1198, 1214 (11th Cir. 2008)). We are "particularly hesitant to overturn a trial court's admissibility ruling under the residual hearsay exception absent a 'definite and firm conviction that the court made a clear error of judgment in the conclusion

12

it reached based upon a weighing of the relevant factors.'" Balogh's of Coral

Gables, Inc. v. Getz, 798 F.2d 1356, 1358 (11th Cir. 1986) (quoting Page v. Barko

Hydraulics, 673 F.2d 134, 140 (5th Cir. 1982)).

## A.

On appeal, Rivers argues that the district court erred in admitting

codefendant counsel Valentin Rodriguez's hearsay testimony under Rule 807

because his statements lacked the required guarantees of trustworthiness.[5] Rivers

notes that parts of Rodriguez's testimony — in particular, his claim about the

timing of the critical pre-hearing meeting — are verifiably incorrect, and argues

that as a result, Rodriguez's testimony is not trustworthy and was improperly

admitted under Rule 807. In response, the government argues that Rodriguez's

confusion about the date of the pre-hearing meeting does not negate or discredit the

remainder of his testimony, including the fact that the meeting still occurred, albeit

on some other date. The district court, the government says, therefore properly

credited Rodriguez's testimony and admitted the hearsay statements under Rule

807.

Both Rivers and the government focus on Rodriguez's credibility in their

analyses of the Rule 807 issue, particularly in regard to the accuracy of his

---

[5] Rivers also argues that Rodriguez's testimony was protected by attorney-client privilege and thus should have been inadmissible. Whether or not this claim has merit, it does not fall within the scope of the COA, and therefore this Court will not consider it. See McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011) ("[T]he scope of our review of an unsuccessful § 2255 motion is limited to the issues enumerated in the COA.").

testimony. Rivers says that Rodriguez's "recollection of events is clearly contradicted by the court record," and argues that, as a result, his testimony cannot be trusted or credited. The government argues that because Rodriguez corrected his mistaken initial recollection about the pre-hearing meeting with Rivers and Jones, the deferential standard requires the Court of Appeals to uphold the district court's credibility findings in this case. In reply, Rivers argues that Rodriguez's testimony was "at a minimum exceedingly improbable," and therefore the Court of Appeals should reverse the district court's finding as to Rodriguez's credibility.

In fact, the district court itself seemed to elide the issue of Rodriguez's credibility with that of Rule 807's "circumstantial guarantees of trustworthiness," saying in the evidentiary hearing about its decision to admit the testimony:

> I'm going to overrule the objection based upon Rule of Evidence 807, which is the residual exception to the hearsay rule, which says, "Under the following circumstances a hearsay statement is not excluded by the rule against hearsay: One, the statement has equivalent circumstantial guarantees of trustworthiness."

> I believe Mr. Rodriguez, as an officer of the Court, would not proffer any false testimony to me about what occurred. This is a meeting that was very critical to his client, and his communications with Mr. McComb relative to Mr. Rivers pleading guilty were very critical to his client. What was said in those types of communications, those conversations, have circumstantial guarantees of trustworthiness.

However, contrary to both the arguments of the parties and the primary focus of the district court, Rodriguez's credibility is not the heart of the issue under

14

Rule 807. Rather, a Rule 807 analysis must consider whether the declarant's original statements now being offered in court have guarantees of trustworthiness given the circumstances under which they were first made. The fundamental question, therefore, is not the trustworthiness of the witness reciting the statements in court, but of the declarant who originally made the statements.[6]

---

[6]    We note that at least one Circuit — the Third — does consider "the reliability of the reporting of the hearsay by the witness," in addition to the circumstantial guarantees of trustworthiness of the declarant's original statements, in determining whether testimony may be admitted under Rule 807. United States v. Bailey, 581 F.2d 341, 349 (3d Cir. 1978). The Seventh Circuit, on the other hand, says the opposite:

> In our view . . . the reliability of the witness' testimony that the hearsay statement was in fact made is not a factor to be considered in deciding its admissibility. We recognize that the Third Circuit said otherwise in the Bailey case, 581 F.2d at 349. But, as we have already noted, the circumstantial guarantees of trustworthiness necessary under the residual exception are to be "equivalent" to the guarantees that justify the specific exceptions. Those guarantees relate solely to the trustworthiness of the hearsay statement itself. The specific exceptions to the hearsay rule are not justified by any circumstantial guarantee that the witness who reports the statement will do so accurately and truthfully. That witness can be cross-examined and his credibility thus tested in the same way as that of any other witness. It is the hearsay declarant, not the witness who reports the hearsay, who cannot be cross-examined.

Huff v. White Motor Corp., 609 F.2d 286, 293 (7th Cir. 1979) (citation omitted).

Because until now this Circuit has not explicitly discussed the importance in the Rule 807 context of evaluating the circumstantial guarantees of trustworthiness of a declarant's original statements, we have not determined whether courts should also consider a witness's reliability in a Rule 807 analysis. We came closest in Herzog v. Castle Rock Entm't, 193 F.3d 1241 (11th Cir. 1999), in which we summarily affirmed a district court opinion that briefly addressed a Rule 807 issue. In that case, one party wished to have a witness testify about statements made by a since-deceased individual and the district court determined that the testimony would be inadmissible under Rule 807 because there would be no way "to verify the accuracy of the testimony or of the out-of-court statements that the testimony reports, and the reliability of the testimony cannot be taken for granted." Id. at 1254–55. As the district court explained, the alleged conversations were five years beforehand, and the testimony about them was "vague, not precise and knowledgeable." Id. at 1254. But the district court failed to consider the trustworthiness of the statements as originally made.

For example, in United States v. Rouco, 765 F.2d 983 (11th Cir. 1985), the defendant argued that the district court erred by admitting testimony from the supervisor of a since-deceased federal agent regarding the agent's acquisition of evidence. Id. at 993. We considered not whether the supervisor's testimony about the agent's story contained guarantees of trustworthiness, but whether the original statements themselves, as made by the deceased agent, contained such guarantees. See id. at 993–94. Similarly, in a number of our cases concerning the Rule 807 admissibility of grand jury testimony at trial, the issue is quite clearly whether the statements as originally made to the grand jury have guarantees of trustworthiness, and not whether what amounts to repeating the statements at trial (the equivalent of Rodriguez recounting his conversations with McComb) is trustworthy. See Mazer, 556 F.3d at 1279; United States v. Lang, 904 F.2d 618, 623 (11th Cir. 1990); United States v. Fernandez, 892 F.2d 976, 980–83 (11th Cir. 1989).

Moreover, the language of Rule 807 itself makes clear that when it comes to trustworthiness, its primary concern is that of the declarant. The rule asks not simply for circumstantial guarantees of trustworthiness, but for guarantees that are equivalent in significance to the specific hearsay exceptions enumerated in Federal

---

At any rate, because as set forth below we find McComb's statements to be insufficiently trustworthy when made, we need not decide here whether even to consider the reliability of Rodriguez's testimony about those statements, much less whether we do find it reliable.

16

Rules of Evidence 803[7] and 804.[8] Therefore, such guarantees must be "equivalent to cross-examined former testimony, statements under a belief of impending death, statements against interest, and statements of personal or family history." Fernandez, 892 F.2d at 980. These categories of hearsay "have attributes of trustworthiness not possessed by the general run of hearsay statements that tip the balance in favor of introducing the information if the declarant is unavailable to testify." Id. And they are all considered sufficiently trustworthy not because of the credibility of the witness reporting them in court, but because of the circumstances under which they were originally made. For example, a dying declaration is trustworthy enough to admit as evidence in certain types of cases because at the time the declaration is made, the declarant believes that she is about to die and the statement concerns the cause of her death — in other words, because of the particular circumstances surrounding the original utterance of the statement. By requiring hearsay admitted under the residual exception to have circumstantial guarantees of trustworthiness that are like the guarantees of the specific exceptions, Rule 807 is clearly concerned, first and foremost, about whether the declarant originally made the statements under circumstances that render the statements more trustworthy.

---

[7]     Rule 803 is entitled "Exceptions to the Rule Against Hearsay — Regardless of Whether the Declarant Is Available as a Witness."

[8]     Rule 804 is entitled "Exceptions to the Rule Against Hearsay — When the Declarant Is Unavailable as a Witness."

The question, thus, that we must first answer in this case is not whether Rodriguez was likely telling the truth in court, as the district court suggested, but whether the hearsay statements allegedly made by McComb to Rodriguez out of court contained circumstantial guarantees of trustworthiness that are equivalent to the guarantees contained in the specific hearsay exceptions.

Courts look to a number of different factors when determining whether an out-of-court declaration is sufficiently trustworthy for the purposes of Rule 807. The Seventh Circuit, for example, considers factors like "the probable motivation of the declarant in making the statement," "the circumstances under which [the statement] was made," "the knowledge and qualifications of the declarant," and the existence of corroborating evidence, among others. United States v. Hall, 165 F.3d 1095, 1110–11 (7th Cir. 1999) (quoting Cook v. Hoppin, 783 F.2d 684, 691 (7th Cir. 1986)) (internal quotation marks omitted). Other courts evaluate "not only the facts corroborating the veracity of the statement, but also the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely," United States v. Bailey, 581 F.2d 341, 349 (3d Cir. 1978); "the totality of the circumstances surrounding the making of the statement and those rendering the declarant particularly worthy of belief," United States v. Barrett, 8 F.3d 1296, 1300 (8th Cir. 1993); whether the declarant had "clear motivation" to lie or mislead, United States v. McCraney, 612 F.3d 1057, 1062 (8th Cir. 2010); and

18

whether the statement concerned facts of which the declarant had personal knowledge, United States v. Earles, 113 F.3d 796, 800 (8th Cir. 1997).

In this case, though the district court focused on and offered several reasons to find Rodriguez's testimony reliable, the order denying Rivers's § 2255 motion gave only one reason to find McComb's original statements to Rodriguez sufficiently trustworthy: "[McComb's] statements were being made to counsel for one of Petitioner's co-defendants." According to the district court, such statements are trustworthy because "[f]rank and forthright communication between counsel for co-defendants is expected when they are planning pretrial strategy, which was the case here."

Without more, this reasoning is insufficient to establish the equivalent circumstantial guarantees of trustworthiness that Rule 807 requires. Most notably, we do not believe that McComb's statements are believable merely because he uttered them to counsel for his client's codefendant. If McComb was providing constitutionally effective assistance of counsel, we agree with the district court that he would have had every incentive to tell the truth to Rodriguez. But if he was failing as completely as Rivers alleges, he would have had every incentive to dissimulate. In any event, to declare that statements made by an attorney to counsel for a codefendant are inherently trustworthy simply because they are made by a lawyer during the course of representing a criminal defendant is to say that even an

19

attorney performing incompetently would not lie about it. Under the circumstances here, this Court will not assume that much. Ultimately, we do not believe that any amount of trustworthiness in the relevant circumstances here is equivalent to that of the specific hearsay exceptions, as required by Rule 807.

We also note the near absence of corroborating evidence for these statements. The existence of corroborating evidence does not necessarily make hearsay evidence admissible under Rule 807. Rather, "corroborating evidence must be extraordinarily strong before it will render the hearsay evidence sufficiently trustworthy to justify its admission." Lang, 904 F.2d at 624. In this case, aside from Rodriguez's own testimony, the only piece of corroborating evidence that speaks to the question of whether McComb consulted with Rivers is McComb's email to the government indicating that he was "trying to get [Rivers] to accept a plea in this matter." But this evidence does not firmly establish the fact that McComb had spoken to Rivers; McComb's statement could well have been anticipatory, for example. Such corroborating evidence does not rise to the level of "extraordinarily strong."

20

Therefore, we hold that McComb's statements to Rodriguez lack equivalent circumstantial guarantees of trustworthiness and that it was error for the district court to admit them under Federal Rule of Evidence 807.[9]

B.

Though we find that the district court erred by admitting Rodriguez's testimony about McComb's statements to him, our inquiry does not end there. Because Rivers preserved his objection to the admission of that testimony, we review the district court's decision for harmless error. See United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005); see also United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999) ("An erroneous evidentiary ruling will result in reversal only if the resulting error was not harmless."). An error is harmless if it "had no substantial influence on the outcome[] and sufficient evidence uninfected by error supports the [decision]." United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990). An error is not harmless if "there is a reasonable likelihood that [it] affected the defendant's substantial rights." Id. Therefore, we must determine whether even without the admission of Rodriguez's testimony about his

---

[9]    Though we need not consider the other three requirements of Rule 807, it is clear that the hearsay statements at issue do meet them. First, the statements are offered as evidence of a material fact, as they speak to the ultimate questions of whether McComb actually reviewed evidence with Rivers and advised him about his case. Second, the statements are more probative on the point for which they are offered than any other reasonably obtained evidence, as McComb's case files are apparently unavailable. Third, admitting the hearsay statements would provide the court with informative evidence that is unavailable through other means and thus would serve the purposes of the Federal Rules of Evidence and the interests of justice.

21

conversations with McComb, there is sufficient evidence to support the district court's decision to deny Rivers's § 2255 motion.

In making that determination, we note that Rivers bears the burden to prove the claims in his § 2255 motion. LeCroy v. United States, 739 F.3d 1297, 1321 (11th Cir. 2014) ("[O]n a § 2255 petition[, the burden of proof] belongs to the petitioner."). The only evidence Rivers has offered in support of his petition is his testimony at the first evidentiary hearing, which the district court did not credit. Therefore, if we uphold the district court's determination that Rivers was not a credible witness, his motion must still fail because he has not met his burden of proof.

"In a 28 U.S.C. § 2255 proceeding, . . . [w]e allot 'substantial deference to the factfinder . . . in reaching credibility determinations with respect to witness testimony.'" United States v. Devine, 520 F.3d 1286, 1287 (11th Cir. 2008) (third alteration in original) (quoting United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003)). Generally, we refuse to disturb a credibility determination unless it is "so inconsistent or improbable on its face that no reasonable factfinder could accept it." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (quoting United States v. Eddy, 8 F.3d 577, 580 (7th Cir. 1993)) (internal quotation marks omitted). Therefore, we will uphold the district court's determination that

22

Rodriguez was credible and Rivers was not unless the court's "understanding of the facts appears to be 'unbelievable.'" Id.

It is evident from the district court's decision on Rivers's § 2255 petition that its determination about Rivers's credibility was dependent upon its determination about Rodriguez's credibility, because with the testimony of these two witnesses, the district court was confronted with two mutually exclusive versions of events. The district court said that "[a]fter considering all of the evidence," it found Rodriguez's testimony "credible and consistent with common sense," while Rivers's version of events "ma[de] no sense and strain[ed] credulity." Furthermore, in noting that the magistrate judge did find Rivers to be a credible witness, the district court explained that it "had a distinct advantage over the Magistrate Judge in arriving at the truth in this case" because it "had the benefit of an attorney eye-witness who was able to refute the Petitioner's previously uncontroverted testimony." It appears that, in effect, the district court examined Rivers's and Rodriguez's competing versions of events and concluded that Rodriguez's story was believable, and Rivers's was not. We will not reverse this determination, because we defer to the district court's finding that Rodriguez was a credible witness — which in turn supports the district court's finding that Rivers was not a credible witness.

The only testimony admitted under Rule 807 was that specifically regarding McComb's statements to Rodriguez. That was not the full extent of Rodriguez's testimony, however; Rodriguez also testified that at several meetings with Jones, McComb, and Rivers, he discussed decisions about a plea with both Rivers and McComb and reminded Rivers of the substantial amount of evidence against him, and that Rodriguez and McComb discussed with their clients the terms of the existing plea offer and the benefits of accepting responsibility. Rodriguez also testified that, at one of those meetings, Rivers declared that he would not accept any plea agreement or plead guilty. All of these statements, which are not inadmissible under our decision today, are evidence that Rivers was aware of the government's evidence against him and the existence and terms of a plea offer. They are also evidence that Rivers did meet and speak with McComb between their initial introduction and trial.

These statements directly contradict Rivers's testimony — impeaching him, in effect, if they are believed — because Rivers testified that he never even spoke with McComb between their first and only phone call and the trial. The district court actually observed Rodriguez's testimony and found it believable. Of course, the magistrate judge observed Rivers's testimony and found it believable. But as the district court noted, Rivers's testimony was then uncontroverted. In comparison, the district court was offered a competing story from a witness it

24

observed, giving it a reason to believe that Rivers was not credible. Under these circumstances, therefore, the district court was entitled to discredit Rivers's testimony. See, e.g., Siewe v. Gonzales, 480 F.3d 160, 171 (2d Cir. 2007) (calling *falsus in uno, falsus in omnibus* — the principle that a witness who willfully testifies falsely to any material matter may be discredited generally — "a natural and instinctive tool of the factfinder, like a carpenter's hammer or plumber's wrench").

Furthermore, we are unpersuaded by Rivers's argument that Rodriguez could not have been a credible witness because he was wrong about the timing of the meetings he described in his testimony. We do not agree with Rivers that any inaccuracies in Rodriguez's testimony as to the times and dates of these meetings effectively negate his testimony that the meetings occurred at some point; the fact that Rodriguez could not remember the exact dates of events that occurred five years before his testimony did not require the district court to accept the proposition that the events did not occur at all. Therefore, we do not believe that Rodriguez's testimony was "unbelievable," Ramirez-Chilel, 289 F.3d at 749, and we defer to the credibility determination of the district court, which actually observed his testimony.

Accordingly, even without the portion of Rodriguez's testimony that was improperly admitted under Rule 807, the remainder of his testimony still gives the

25

district court reason to believe that Rivers did not tell the truth before the magistrate judge, and thus to discredit Rivers's testimony. We conclude that the district court's credibility findings were neither inconsistent nor improbable, Ramirez-Chilel, 289 F.3d at 749, and we will not reverse them.

Because Rivers bears the burden to prove the claims in his § 2255 motion, the district court's finding that Rivers was not a credible witness makes its Rule 807 error a harmless one. Given that Rivers's motion relies solely on his discredited testimony, he has failed to present evidence in support of his claims. Therefore, even without Rodriguez's testimony about statements McComb made to him — the admission of which this Court finds to be in error — Rivers has not met his burden of proof and his § 2255 motion must still be denied.

## III.

For the foregoing reasons, the judgment of the district court denying Rivers's motion to vacate pursuant to 28 U.S.C. § 2255 will be

**AFFIRMED.**