[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-12021
Non-Argument Calendar

————————————————

D.C. Docket Nos. 3:16-cv-00593-LC-EMT; 3:13-cr-00077-LC-EMT-1

JOHN NORMAN SIMS,

Petitioner-Appellee,

versus

UNITED STATES OF AMERICA,

Respondent-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Florida

————————————————

(August 13, 2019)

Before JORDAN, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Briefly, the factual background of this case is as follows.  Sims pleaded guilty to several counts, including violation of 18 U.S.C. § 793(e).  Sims was concerned about whether his plea would adversely affect his military retirement pay, but was told by counsel, Attorney A, that the government was not going after his retirement pay.  Nevertheless, almost a year after the plea, his retirement pay was terminated because of his plea to the § 793(e) violation.  Sims did not file a direct appeal, but did file a motion to vacate under 28 U.S.C. § 2255.  The magistrate judge held an evidentiary hearing, and heard the testimony of Sims, several members of his family and friends, and the two lawyers who had represented Sims (Attorneys A and B).  Sims testified that Attorney A advised him that his guilty plea would not adversely affect his retirement pay (the "good news" statement).  His several friends and family members provided corroborating testimony.  Both attorneys testified to the contrary.  In his Report and Recommendation ("R&R"), the magistrate judge found that Sims's testimony was more credible than that of the lawyers.  The magistrate judge found that Attorney A had affirmatively misadvised Sims as to that collateral consequence of the proposed guilty plea.  The magistrate judge recommended that that constituted ineffective assistance of counsel; that Sims had established prejudice, crediting Sims's testimony that he would not have pleaded guilty had he known he would lose his retirement pay; that Sims's conviction on Count 34 (violation of § 793(e))

2

should be vacated; and that Sims' be allowed to withdraw his plea to that count. The district court adopted the R&R.[1]

The government appeals the district court's order granting John Norman Sims's 28 U.S.C. § 2255 motion to vacate and vacating the conviction and sentence as to one of his five counts of conviction. First, it argues that the district court clearly erred in finding that Sims's counsel provided affirmative misadvice about the collateral consequences of his guilty plea to Count 34. Next, it argues that the district court erred in concluding that Sims timely filed his motion under 28 U.S.C. § 2255(f)(4).

## I.

Whether counsel was ineffective is a mixed question of law and fact. *Thompson v. United States*, 504 F.3d 1203, 1206 n.4 (11th Cir. 2007). We review the district court's findings of fact for clear error and its legal conclusions *de novo*. *Id.* Whether counsel affirmatively misadvised a defendant on the collateral consequences of a guilty plea is a factual finding that we review for clear error. *See Bauder v. Dep't of Corrs.*, 619 F.3d 1272, 1274 (11th Cir. 2010) ("Based on counsel's testimony described above, we cannot say that the district court's factual finding that counsel misadvised Bauder is clearly erroneous.").

---

[1]    The findings and conclusions of the magistrate judge and the district court will be referred to hereafter collectively as the district court.

3

In a § 2255 proceeding, we afford substantial deference to the district court's credibility determinations with respect to witness testimony. *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015). In general, we will not disturb the district court's credibility finding unless the testimony is so inconsistent or improbable on its face that no reasonable factfinder could accept it. *Id.* at 1317.

To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The deficient performance prong requires a movant to show that counsel acted unreasonably in light of prevailing professional norms. *Id.* at 688. Where the petitioner challenges his guilty plea based on his counsel's alleged deficient performance, he can show prejudice by showing that there was a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

An attorney's failure to advise his client of collateral consequences of pleading guilty, other than deportation, is not a Sixth Amendment violation. *See Chaidez v. United States*, 568 U.S. 342, 356 (2013) (noting that the Supreme Court had abrogated this rule only in the context of deportation). However, affirmative misadvice about the collateral consequences of a guilty plea may constitute ineffective assistance of counsel because "certain considerations are so important

4

that misinformation from counsel may render the guilty plea constitutionally uninformed." *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 (11th Cir. 1985). Where a defendant is affirmatively misadvised about a collateral consequence of a guilty plea, he can show prejudice by proving that he would not have pled guilty and would have proceeded to trial, even if the possibility of acquittal was highly unlikely. *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

In *Bauder*, we held that an attorney's performance was deficient when he made an affirmative representation that the defendant would not be subjected to civil commitment if he pled guilty. *Bauder*, 619 F.3d at 1275. We noted that "counsel did not tell Bauder that there was a possible risk of civil commitment, or that the law was unclear as to whether it could apply to Bauder, or that he simply did not know," but instead told him that pleading guilty would not subject him to civil commitment, constituting affirmative misadvice. *Id.*

An individual convicted of an offense under 18 U.S.C. § 793 may not be paid annuity or retired pay based on his past government service. 5 U.S.C. § 8312(a)(1), (b)(1)(A). Issues that are not briefed on appeal are deemed abandoned. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

The district court did not clearly err in finding that Sims was affirmatively misadvised by Attorney A. We defer to the district court's credibility findings, including: (a) that Attorney A made the "good news" statement to Sims; and (b)

5

that Sims's later request for written information about the effect of a guilty plea on his retirement pay did not undermine Sims's testimony about what Attorney A told him.  Both findings were based on testimony that was not inconsistent or improbable on its face.  *Rivers*, 777 F.3d at 1316-17.  As the district court found, Sims's confidence in what Attorney A told him was demonstrated by his telling multiple friends and family members that his retirement was safe, including when he rented a home for his wife.  Further, when he did not get a response to his June 19 e-mail from attorneys Attorney B or Attorney A, he concluded that, based on what Attorney A had already told him, there was nothing more to discuss on that issue.  This is consistent with his testimony that, at a meeting with Attorney A the following week, they discussed the topic of retirement only briefly and he did not stop to discuss it further because he felt comfortable about that issue.  The government's argument that Attorney A's "good news" statement was not affirmative misadvice because of Attorney B's June 18 e-mail stating that he could not provide a definitive answer is resolved by the district court's finding that Sims's written inquiries did not discredit his belief in Attorney A's assurance.  *See id.*  Regardless, the government's argument fails because the fact that Attorney B told Sims that he did not have an answer—which was not affirmative misadvice— had no bearing on the fact that Attorney A told him that the government would not

6

go after his retirement.  *See Bauder*, 619 F.3d at 1275.  Sims and his mother

testified that it was Attorney A who gave him the misadvice, not Attorney B.

Finally, it was not clear error for the district court to find that Attorney A's

statement was affirmative misadvice, as opposed to a statement that a risk existed

or that the law was unclear.  *See id.* at 1274-75.  Sims's testimony established that

he believed the government's decision to "go after" his retirement was

discretionary—as evidenced by his decision, on Attorney A's advice, not to testify

at sentencing.  Thus, he relied on Attorney A's assurance that the government had

told him it would not do so as long as the plea remained intact.  Further, that the

plea agreement stated that it did not bind other agencies from pursuing claims

against him was not sufficient to cure Attorney A's assurance, because Sims

believed that he would have had to be charged under 5 U.S.C. § 8312 in order to

lose his retirement.  And of course, which statute to charge was a charging

decision, which would be within the prosecution's discretion.  Thus, the district

court did not clearly err in finding that Attorney A's statement led Sims to plead

guilty to Count 34 based on the incorrect belief that he would not lose his

retirement.  *See Bauder*, 619 F.3d at 175; *Downs-Morgan*, 765 F.2d at 1541.

Accordingly, the district court did not clearly err.[2]

---

[2]    The government does not challenge on appeal the district court's conclusions that the affirmative misadvice constituted deficient performance or that it prejudiced Sims.

7

II.

A district court's determination of whether a § 2255 motion is time-barred is reviewed *de novo*. *Beeman v. United States*, 871 F.3d 1215, 1219 (11th Cir. 2017), *cert. denied*, 139 S. Ct. 1168 (2019). However, we review the district court's finding of whether a petitioner exercised due diligence under § 2255(f)(4) for clear error. *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002).

There is a one-year statute of limitations for filing a § 2255 motion to vacate, which begins to run on the latest of four triggering dates, which include:

> (1) the date on which the judgment of conviction becomes final; [and]
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1), (4).

In assessing the timeliness of a motion to vacate under § 2255(f)(4), the district court should first consider whether the petitioner exercised due diligence. *Aron*, 291 F.3d at 711. If the petitioner did exercise due diligence, the one-year limitation period begins to run on the date that he actually discovered the relevant facts. *Id.* If the petitioner did not exercise due diligence, the district court must speculate about the date on which the relevant facts could have been discovered with the exercise of due diligence, and the limitation period would begin to run on that date. *Id.* at 711 n.1, 711. The "due diligence" element of § 2255(f)(4) requires

8

neither the "maximum feasible diligence" nor the undertaking of repeated exercises in futility, but it does require that a prisoner make "reasonable efforts" in discovering the factual predicate of his claim. *Id.* at 712.

Here, the district court did not err in concluding that Sims's motion was timely under § 2255(f)(4). Sims filed his motion in October 2016, which was more than one year after his conviction became final on November 19, 2014, but less than one year after his retirement payments were stopped on November 1, 2015. 28 U.S.C. § 2255(f)(4). The district court did not clearly err in finding that Sims could not have sooner discovered through due diligence that counsel gave him affirmative misadvice regarding the effect of his guilty plea on his retirement pay. *See Aron*, 291 F.3d at 711. As discussed above, Sims believed Attorney A's representation that his retirement pay and benefits were not at risk. It was not unreasonable for him to accept Attorney A's representation, especially in light of the fact that his retirement payments continued for nearly a year after the district court entered judgment. Although Sims was aware that there was ambiguity about whether his conviction could result in the loss of his retirement pay, he made reasonable efforts to resolve that ambiguity by asking his attorneys about it, doing his own research, and concluding that he should trust Attorney A's statement. *See id.* at 712. As the district court concluded, Sims had no reason to believe that Attorney A's statement was not true until his benefits stopped and, thus, had no

9

reason to continue to research the issue, beyond the efforts he had already made prior to his plea, until November 1, 2015.  *See id.*  Accordingly, as the fact underlying his claim—that Attorney A's representation was not true—could not have been discovered through due diligence until the benefits stopped, his § 2255 motion was timely under § 2255(f)(4).

**AFFIRMED.**