[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12552

Non-Argument Calendar

_____

STANLEY PRESENDIEU,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-21524-DPG

_____

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Stanley Presendieu appeals the district court's denial of his motion to vacate under 28 U.S.C. § 2255. He asserts that a variance waiver provision in his plea agreement violated his due process right to present all materially accurate information at sentencing and that his sentencing counsel was ineffective both for failing to present evidence of his cooperation and for failing to challenge the government's loss calculation at sentencing.

We affirm. The district court did not err in finding that the variance waiver provision did not violate Mr. Presendieu's due process rights because it did not prevent him from presenting evidence of his cooperation. Mr. Presendieu's ineffective assistance of counsel claims likewise fail because the alleged evidence of deficient performance and prejudice is either speculative or not supported by the record.[1]

## I

In 2015, Mr. Presendieu signed a plea agreement committing to plead guilty to one count of conspiracy to commit bank fraud and one count of aggravated identity theft. As part of that

---

[1] We assume the parties' familiarity with the facts and procedural history and set out only what is necessary to explain our decision. As to issues not discussed, we summarily affirm.

agreement, Mr. Presendieu agreed to cooperate fully with the government by providing information on other defendants and potential targets. The government in turn "reserve[d] the right to evaluate the nature and extent of [his] cooperation and to make that cooperation, or lack thereof, known to the Court." D.E. 12 at 7-1. In addition, because Mr. Presendieu agreed that the government had "sole and unreviewable discretion to move for any sentencing reduction based on his cooperation, [he] agree[d] that he [would] not seek a variance from the guideline range . . . because of any cooperation." *Id.* Mr. Presendieu also agreed to entry of a money judgment against him in the amount of $2,594,839.39, a figure which "represent[ed] the proceeds of the offense to which he [pled] guilty." *Id.*

## A

During the change of plea hearing, Mr. Presendieu was sworn and testified that he was of sound mind and that he signed the plea agreement after reading and discussing all of its terms with his attorney. He further testified that he understood all of the terms. Notably, he specifically confirmed that he understood that the government had the right to evaluate the nature and extent of his cooperation and that he was waiving the right to seek a variance based on his cooperation.

The district court described the maximum penalties for the relevant counts, including those connected to the amount of the money judgment Mr. Presendieu agreed to pay. When the district

court asked Mr. Presendieu for a second time whether he under-stood that he agreed to the entry of a money judgment of $2,594,839.39, he said that he did.  He also confirmed that he had enough time to discuss everything in the plea agreement with his attorney and that he entered the plea agreement of his own free will.  He also testified that his attorney had done everything that was asked of him and that he was fully satisfied with his attorney's performance.  The district court found that Mr. Presendieu know-ingly and voluntarily entered his guilty plea and accepted it.

At the sentencing hearing, Mr. Presendieu's attorney, Ar-naldo Suri, argued for several downward variances, including the application of an impending revision to the Sentencing Guidelines that would reduce the total offense level by two levels.  He did not, however, describe Mr. Presendieu's efforts to cooperate with the government.  The government acknowledged that Mr. Presendieu had cooperated with the authorities "to a degree," but did not move for a departure or variance based on his cooperation.

As to the loss amount, Mr. Suri told the district court that he had "work[ed] with [the government]" on coming to an agreement on a figure.  *See* D.E. 7-3 at 7–8.  He then asked the district court to sentence Mr. Presendieu "under the new guidelines" and moved the court for a downward variance as to the loss amount.  *Id.*  At the end of the sentencing hearing, when given the opportunity to allocute, Mr. Presendieu's sole comment was, "I think my lawyer did a pretty good job for me." *Id.* at 35.

Ultimately, the district court sentenced Mr. Presendieu to 212-months' imprisonment and five years of supervised release. The sentence was 188 months for the conspiracy charge—at the bottom of the advisory guidelines range—and a consecutive 24 months for the aggravated identity theft charge. The district court further found that Mr. Presendieu agreed to a loss of more than $2.5 million in connection with his crimes and ordered restitution in that amount. Mr. Presendieu appealed his sentence to this Court, raising several arguments unrelated to the instant appeal. We held that Mr. Presendieu's plea was knowing and voluntary and that he understood the nature of the charges against him. *See United States v. Presendieu*, 880 F.3d 1228, 1240 (11th Cir. 2018).

## B

In 2019, Mr. Presendieu filed a motion under 28 U.S.C. § 2255 seeking to vacate his sentence. As relevant here, Mr. Presendieu raised the following grounds for relief: (1) unconstitutional provisions in his plea agreement prevented him from presenting all materially accurate information at sentencing; and (2) his sentencing counsel provided ineffective assistance in failing to present evidence of his cooperation with the government and failing to advise him that by agreeing to restitution and forfeiture amounts in the plea agreement, he would be liable for a loss amount between $2.5 million and $7 million under the Sentencing Guidelines.

After briefing from both parties, the magistrate judge held a hearing on Mr. Presendieu's § 2255 motion. Mr. Suri was present at the hearing, but Mr. Presendieu did not call him as a witness.

Instead, Mr. Presendieu was the only witness at the hearing. He testified that Mr. Suri assisted him in his cooperation with the government and that over the course of five or six debriefings he turned over a laptop, two iPhones, an iPad, and two other phones. He further testified that he identified or aided in the identification of several other government targets. As to the plea agreement and change of plea hearing, Mr. Presendieu testified that he did not understand that he was waiving his right to pursue a variance based on cooperation efforts and that Mr. Suri told him that the government would move for a downward departure or a variance based on his cooperation. Mr. Presendieu further testified that he did not agree with the calculation of the loss amount reflected in his plea agreement, but that Mr. Suri encouraged him to sign the plea agreement anyway.

During cross-examination, Mr. Presendieu alternated between giving evasive responses and stating that he did not understand the government's questions. This prompted the magistrate judge to note that Mr. Presendieu had no trouble understanding his own counsel's questions but "all of a sudden he [did] not understand the prosecutor's questions." D.E. 19 at 49.

When asked whether he understood the Sentencing Guidelines, Mr. Presendieu responded, "[n]ow I do, yes," but at the time he agreed to the plea agreement he was "just going by what [his] lawyer was telling [him]." *Id.* at 57. Regarding the loss amount, Mr. Presendieu acknowledged that Mr. Suri was able to secure a plea agreement that did not require him to stipulate to a loss

amount but stated that he argued with Mr. Suri about the amount and "never got proof of the money amount." *Id.* at 58–59. Mr. Presendieu further testified that he never discussed the language in his plea agreement with his attorney and did not understand the terms of his plea agreement but did know that the amount of restitution agreed to was incorrect. When asked if he was lying when he told the district court during his change of plea hearing that he discussed everything in the plea agreement with his attorney, Mr. Presendieu responded that he "went along with everything [Mr. Suri] told him to say yes to." *Id.* at 63–64.

The magistrate judge issued a report recommending denial of Mr. Presendieu's motion to vacate. As relevant here, the magistrate judge found that Mr. Presendieu was not credible at the evidentiary hearing because he was evasive and self-contradictory throughout his cross-examination. The magistrate judge further found that Mr. Presendieu's attempt to establish a lack of knowledge and understanding of the change of plea and sentencing processes to be self-serving and "wholly unworthy of belief." D.E. 17 at 13.

The district court adopted the report and denied Mr. Presendieu's motion. It later granted a certificate of appealability ("COA") on the following issues: "whether [Mr. Presendieu] established a basis for 28 U.S.C. § 2255 relief on his claims that sentencing counsel provided ineffective assistance and that a waiver provision in his plea agreement violated his due process right to the presentation of materially accurate information at sentencing."

## II

In reviewing a district court's denial of a § 2255 motion, we review legal conclusions *de novo* and findings of fact for clear error. *See Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014). On appeal, we must give substantial deference to the factfinder's credibility determinations with respect to witness testimony. *See Rivers v. United States*, 777 F.3d 1306, 1316–17 (11th Cir. 2015). We generally refuse "to disturb a credibility determination unless it is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Id.* at 1317 (quotation marks omitted).

We may affirm the denial of a § 2255 motion on any basis supported by the record. *See Beeman v. United States*, 871 F.3d 1215, 1221 (11th Cir. 2017).

## A

We first address Mr. Presendieu's assertion that his plea agreement unconstitutionally barred him from presenting information about his cooperation with the authorities. In essence, Mr. Presendieu argues that the variance waiver provision in his plea agreement infringed on his due process rights because it prevented him from providing complete and accurate information for use in determining his sentence.

The degree of due process protection required at sentencing is "only that which is necessary 'to ensure that the district court is sufficiently informed to enable it to exercise its sentencing discretion in an enlightened manner.'" *United States v. Plasencia*, 886

F.3d 1336, 1343 (11th Cir. 2018) (quoting *United States v. Stephens*, 699 F.2d 534, 537 (11th Cir. 1983)). Criminal defendants have the due process right not to be sentenced on the basis of inaccurate information. *See id.* "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Nothing in the record reflects that the variance waiver provision prevented Mr. Presendieu from providing the district court with information regarding the extent of his cooperation with the government, nor that he was sentenced on the basis of inaccurate information. Instead, the waiver only restricted him from moving for a downward variance on the basis of cooperation. As a practical matter, both the government and the presentence investigation report informed the district court of Mr. Presendieu's attempts to cooperate with law enforcement. *See* PSIR ¶ 5 (noting that Mr. Presendieu "agreed to cooperate with the United States Attorney's Office"). As such, the district court was apprised of Mr. Presendieu's efforts to cooperate, and the variance waiver provision did not restrict his attorney from expanding on the government's characterization of those efforts.

As to Mr. Presendieu's claim that the variance waiver provision unconstitutionally barred him from moving for a variance based on his cooperation, he fails to point to any legal authority to

support that proposition. We have repeatedly upheld plea provisions giving the government total discretion with respect to moving for such reductions. *See United States v. Forney*, 9 F.3d 1492, 1501 (11th Cir. 1993) (holding that language granting government "sole and unreviewable" discretion regarding cooperation-based variances precludes courts "from intruding into prosecutorial discretion") (citing *Wade v. United States*, 504 U.S. 181, 184 (1992)). *See also United States v. Rodriguez*, 846 F. App'x 868, 870 (11th Cir. 2021) (court lacked jurisdiction to compel government to file cooperation-based sentencing reduction, where plea agreement granted sole discretion over such motions to the prosecution); *United States v. Perez-Morales*, 322 F. App'x 713, 716 (11th Cir. 2009) (same). In essence, Mr. Presendieu and the government agreed not to permit a motion for a downward variance based on cooperation but allowed for the possibility of using cooperation as a factor in where to sentence within the advisory guideline range. That functioned like a stipulation agreeing to a sentence within the advisory guidelines, and Mr. Presendieu has not explained why such an agreement is problematic. We note, as well, that the district court imposed a sentence at the bottom of the applicable guideline range.

To the extent that Mr. Presendieu now seeks to argue that his plea was involuntary because he did not understand the "nuances" of the variance waiver provision, we review that argument for plain error because he did not challenge the voluntariness of his guilty plea below. *See United States v. Rodriguez*, 751 F.3d 1244,

1251 (11th Cir. 2014). Plain error occurs where: (1) there is an error; (2) that is plain; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).

There was no plain error. Mr. Presendieu cannot show that the district court erred in accepting his guilty plea because it ensured that his plea was free from coercion, that he understood the nature of the charges against him, and he understood the direct consequences of the guilty plea. *See* D.E. 7-2 at 3–12. *See also Moriarty*, 429 F.3d at 1019 (holding that a guilty plea complies with Rule 11 where the district court ensures that these three "core principles" have been established). In fact, during the change of plea hearing, Mr. Presendieu twice confirmed that he understood the variance waiver provision in particular: once when he was asked whether he understood that the government would retain the right to evaluate the nature and extent of his cooperation, and a second time when asked whether he understood that he would be relinquishing the right to seek a variance from the guidelines range based on cooperation. Both times, he replied, "Yes, sir." D.E. 7-2 at 7. And though Mr. Presendieu testified that he did not understand the change of plea process during the § 2255 hearing, the magistrate judge (and the district court) reasonably found that testimony self-serving and uncredible, and we defer to that finding. *See Rivers*, 777 F.3d at 1316–17.

## B

Next, we consider Mr. Presendieu's ineffective assistance of counsel claims. The Constitution provides criminal defendants the right to effective assistance of counsel. *See* U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). To succeed on an ineffective assistance of counsel claim, a movant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *See Strickland*, 466 U.S. at 687.

Counsel's performance is deficient where it falls "below an objective standard of reasonableness." *Id.* at 688. Judicial scrutiny of an attorney's performance is highly deferential. *See id.* at 689. A court considering an ineffective assistance claim must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The movant bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To prove the prejudice prong under *Strickland*, the movant must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial. *See id.* It is not enough for the movant to show that the error had some conceivable effect on the outcome of the proceeding. *See id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of

a fair trial, a trial whose result is reliable." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quotation marks omitted). A movant is not entitled to relief when his claims are merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (quotation marks omitted).

1

The district court did not err in denying Mr. Presendieu's claim that Mr. Suri was ineffective for failing to present evidence of his cooperation despite the variance waiver provision because, among other things, it reasonably found that Mr. Presendieu's testimony at the evidentiary hearing was not credible, and the remaining evidence of deficient performance is either speculative or not supported by the record. *See Tejada*, 941 F.2d at 1559. Mr. Presendieu did not call Mr. Suri to testify at the § 2255 hearing. Instead, the only evidence he presented as to Mr. Suri's reasoning for not discussing his cooperation was his own self-serving speculation, which the magistrate judge and the district court reasonably did not credit and is, therefore, insufficient to satisfy deficient performance. *See Tejada*, 941 F.2d at 1559. As such, Mr. Presendieu did not rebut the presumption that Mr. Suri's representation fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.

As for the prejudice prong, Mr. Presendieu likewise fails because he did not show a reasonable probability that he would have received a shorter sentence had Mr. Suri provided additional details

regarding his cooperation. *See Strickland*, 466 U.S. at 693. At sentencing, the district court was already aware that Mr. Presendieu did in fact cooperate with the government. And because Mr. Presendieu's own testimony was found to be not credible by the magistrate judge and the district court, there is nothing else in the record to suggest that Mr. Presendieu would have fared better had Mr. Suri expounded on the government's characterization of his efforts. Accordingly, Mr. Presendieu's claim fails.

**2**

The district court properly denied Mr. Presendieu's claim that Mr. Suri was ineffective for failing to object to the government's loss amount calculation because, among other things, it reasonably determined that Mr. Presendieu's testimony at the evidentiary hearing was not credible. *See Tejada*, 941 F.2d at 1559. Mr. Suri's decision to accept the government's loss amount after negotiations with the government is entitled to a strong presumption that it "falls within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689. The only evidence Mr. Presendieu relies upon to rebut that presumption, aside from his own uncredited testimony, is that several of his codefendants were resentenced with significantly lower loss amounts years after his own sentencing. But that information was not available to Mr. Suri at the time of his sentencing. As such, it does not bear on our evaluation of Mr. Suri's performance. *See Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (holding that we must evaluate the reasonableness of counsel's performance based on

their perspective at the time and avoid the "distorting effects of hindsight"). In sum, Mr. Presendieu's claim that he would have received a shorter sentence had Mr. Suri independently calculated the loss amount is speculative and does not warrant relief. *See Tejada*, 941 F.2d at 1559. [2]

## III

Accordingly, we affirm the district court's denial of Mr. Presendieu's § 2255 motion.

**AFFIRMED.**

---

[2] The government asserts that this claim is beyond the scope of the COA. *See McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011) (holding that the scope of our review of an unsuccessful § 2255 motion is limited to the issues enumerated in the COA). We conclude that the COA covers this issue because the district court granted the COA on whether sentencing counsel was ineffective and this issue concerns counsel's performance at the sentencing hearing.