[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16710

_____

D.C. Docket Nos. 4:16-cv-00143-HLM, 4:08-cr-00038-HLM-WEJ-1


JEFFREY BERNARD BEEMAN,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 22, 2017)

Before JULIE CARNES and EDMONDSON, Circuit Judges, and WILLIAMS,[*]
District Judge.


JULIE CARNES, Circuit Judge:

_____

[*] The Honorable Kathleen M. Williams, of the Southern District of Florida, sitting by
designation.

In 2009 Jeffrey Bernard Beeman was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g), and possession with intent to distribute a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). Finding that Beeman was subject to enhanced sentences for his firearm and ammunition offenses under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), the district court imposed three concurrent 210-month sentences. In 2016 Beeman filed a 28 U.S.C. § 2255 motion to vacate his sentence, contending that he was entitled to resentencing because in *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551 (2015), the Supreme Court had struck down part of the ACCA as unconstitutionally vague. The district court denied his motion, and Beeman has appealed.

## I.    BACKGROUND

In 1990 Beeman was convicted in Georgia of aggravated assault. In 1999 he was convicted in Georgia of two counts of possession of cocaine with intent to distribute. Then, in 2009, he was convicted of the federal firearm, ammunition, and drug offenses giving rise to the 210-month sentences that he is challenging in his § 2255 motion.

2

Normally a conviction for being a felon in possession of a firearm or ammunition carries a statutory maximum sentence of ten years.  18 U.S.C. §§ 922(g), 924(a)(2).  But if a defendant who is convicted of one of those offenses already has three or more convictions for a "violent felony" or a "serious drug offense," the ACCA provides that he must be sentenced to at least 15 years of imprisonment.  *Id.* § 924(e)(1).  When Beeman was sentenced in 2009, the ACCA defined a "violent felony" as follows:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

*Id.* § 924(e)(2)(B).  The first prong of that definition, § 924(e)(2)(B)(i), is known as the "elements clause."  *Mays v. United States*, 817 F.3d 728, 730–31 (11th Cir. 2016).  The second prong, § 924(e)(2)(B)(ii), is itself split into two clauses.  The first part, listing burglary, arson, extortion, or an offense involving the use of explosives, is known as the "enumerated offenses clause," and the second part is known as the "residual clause."  *Id.*

Beeman's presentence investigation report (PSR) listed his conviction for aggravated assault and two convictions for possession of cocaine with intent to

3

distribute and concluded that, based on those convictions, he qualified for the ACCA enhancement. Beeman did not object to that recommendation, and the district court adopted it without further discussion. The PSR did not recommend whether the aggravated assault conviction should be found to be a violent felony for ACCA purposes under the elements clause or the residual clause or both, and the district court did not specify whether its finding that the conviction qualified was based on the elements clause or the residual clause or both. Beeman appealed his convictions but not his sentences, and on July 8, 2010, this Court affirmed. *United States v. Beeman*, 386 F. App'x 827, 835 (11th Cir. 2010).

On June 26, 2015, the United States Supreme Court held that the ACCA's residual clause is unconstitutionally vague. *Johnson*, 135 S. Ct. at 2563. And in April 2016, the Court held that the *Johnson* decision is retroactively applicable to cases on collateral review. *Welch v. United States*, 578 U.S. __, 136 S. Ct. 1257, 1268 (2016).

On June 7, 2016, Beeman filed his § 2255 motion, attacking his ACCA-enhanced sentences for his firearm and ammunition offenses. His argument proceeded in three parts. First, he contended that the *Johnson* decision invalidated his ACCA sentences because when he was sentenced in 2009 his Georgia conviction for aggravated assault would have qualified as a violent felony under the residual clause of the ACCA. Second, he pointed out that his aggravated

assault conviction was not a violent felony under the enumerated offenses clause because assault is not included in that list of crimes.  And third, he argued that a conviction under the Georgia aggravated assault statute does not now qualify as a violent felony under the elements clause.  In making that argument about the elements clause he relied heavily on the Supreme Court's 2013 decision in *Descamps v. United States*, 570 U.S. __, 133 S. Ct. 2276 (2013), which is one in a line of Supreme Court decisions describing how federal courts should determine whether an offense qualifies as a predicate offense under the ACCA's enumerated offenses and elements clauses.  *See Mathis v. United States*, 579 U.S. __, 136 S. Ct. 2243 (2016); *Descamps*, 133 S. Ct. 2276; *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254 (2005); *Taylor v. United States*, 495 U.S. 575, 110 S. Ct. 2143 (1990).

The district court denied Beeman's § 2255 motion as untimely and, alternatively, on the merits.  It determined that Beeman's § 2255 motion was untimely because he filed it more than a year after his judgment of conviction became final and the motion failed to raise a true *Johnson* claim, instead "at its core, rel[ying] on *Descamps*."  As an alternative ground, the court determined that even under the *Descamps* decision, a Georgia conviction for aggravated assault qualifies as a violent felony under the ACCA's elements clause.

5

## II.    DISCUSSION

### A.    The Time Bar

"We review *de novo* the district court's determination that a § 2255 motion to vacate is time-barred." *Drury v. United States*, 507 F.3d 1295, 1296 (11th Cir. 2007). The Antiterrorism and Effective Death Penalty Act (AEDPA) provides a one-year statute of limitations to bring a § 2255 motion. 28 U.S.C. § 2255(f). The limitations period begins to run on the latest of four possible triggering dates. *See id.* Typically, the applicable triggering date is "the date on which the judgment of conviction becomes final." *Id.* § 2255(f)(1). Beeman cannot rely on that limitations period, however, because he filed his § 2255 motion almost five years after its expiration. Instead, he asserts that his § 2255 motion is timely because he filed it within one year of the Supreme Court's *Johnson* decision, bringing it within the limitations period that begins on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3).

The § 2255(f) statute of limitations "requires a claim-by-claim approach to determine timeliness." *See Zack v. Tucker*, 704 F.3d 917, 924, 926 (11th Cir. 2013) (en banc); *accord Davis v. United States*, 817 F.3d 319, 327–28 (7th Cir. 2016) ("But as every other circuit to have considered the question has concluded,

6

and we now hold, the timeliness of each claim asserted in either a section 2255 motion or a petition challenging a state-court conviction under 28 U.S.C. § 2254 must be considered independently.") (footnotes omitted).  In other words, if a § 2255 movant asserts that his § 2255 motion is timely because he filed it within one year of the Supreme Court's issuance of a decision recognizing a new right, we must determine whether each claim asserted in the motion depends on that new decision.  If a particular claim does not depend on the new decision, that claim is untimely and must be dismissed.

In order for a Supreme Court decision to restart the one-year statute of limitations under § 2255(f)(3), the decision must both (1) recognize a new right and (2) be made retroactively applicable to cases on collateral review.  *See* 28 U.S.C. § 2255(f)(3).  The issuance of the Supreme Court's *Johnson* decision meets both of those requirements.  The Supreme Court held in *Welch* that *Johnson* announced a new rule that is retroactively applicable to cases on collateral review. *See Welch*, 136 S. Ct. at 1268.  Because the Supreme Court issued *Johnson* on June 26, 2015, *Johnson*, 135 S. Ct. 2551, a § 2255 movant wishing to raise a *Johnson* claim had until June 26, 2016, to file a motion obtaining that claim.  *See* 28 U.S.C. § 2255(f)(3).

On the other hand, the issuance of the *Descamps* decision cannot qualify as a triggering date under § 2255(f)(3).  It is true that we have held that the *Descamps*

7

decision is retroactively applicable to cases on collateral review. *Mays*, 817 F.3d at 733–34. But being retroactively applicable to cases on collateral review is only part of the test for restarting the statute of limitations. AEDPA also requires that the right have been "newly recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3).

In holding that the *Descamps* decision is retroactively applicable to cases on collateral review, our *Mays* decision makes clear that *Descamps* did not set out a newly recognized right. In fact, we based our decision on the recognition that "*Descamps* did not announce a new rule—its holding merely clarified existing precedent." 817 F.3d at 734; *see also Descamps*, 133 S. Ct. at 2283 ("Our caselaw explaining the categorical approach and its 'modified' counterpart all but resolves this case."). And as we have explained, "[i]f the decision merely clarifies an old rule, . . . . the petitioner will not be able to take advantage of the extended statute of limitations under § 2255, which requires a newly recognized right by the Supreme Court." *Figuereo-Sanchez v. United States*, 678 F.3d 1203, 1207 n.4 (11th Cir. 2012). As a result, a § 2255 movant wishing to raise a *Descamps* claim cannot rely on subsection (f)(3) as the starting point for the calculation of the limitations period. Instead, he must file his motion within one year of one of the other triggering dates set out in § 2255(f).

8

Beeman's judgment of conviction became final in October 2010, meaning that the one-year statute of limitations under § 2255(f)(1) expired in October 2011. He did not file his § 2255 motion until June 7, 2016, almost five years later. The extended § 2255(f)(3) limitations period for raising a *Johnson* claim expired on June 26, 2016, the one-year anniversary of the *Johnson* decision. As a result, if his § 2255 motion raised a *Johnson* claim, that claim was timely, but any other claim the motion raised—including a *Descamps* claim—was untimely.

A *Johnson* claim and a *Descamps* claim make two very different assertions. A *Johnson* claim contends that the defendant was sentenced as an armed career criminal under the residual clause, while a *Descamps* claim asserts that the defendant was incorrectly sentenced as an armed career criminal under the elements or enumerated offenses clause. Beeman raised both of those claims in his § 2255 motion. He focused largely on an argument that the 2013 *Descamps* decision meant that his Georgia conviction for aggravated assault could no longer qualify as a violent felony under the elements clause. That is obviously a *Descamps* claim. But he also claimed that when sentencing him in 2009, the district court relied on the residual clause to find that his aggravated assault conviction qualified as a violent felony under the ACCA. In support of that proposition, he asserted that aggravated assault in Georgia was a crime "which historically qualified as an ACCA predicate under that statute's residual clause."

9

Therefore, he contended that the *Johnson* decision required he be resentenced without the ACCA enhancement.  That sounds like a *Johnson* claim.

The district court determined that Beeman's § 2255 motion was untimely because it raised only a *Descamps* claim.  We agree that the motion raised an untimely *Descamps* claim, and that part of the district court's order is due to be affirmed on that ground.

We disagree, however, with the district court's conclusion that Beeman's § 2255 motion did not also assert a *Johnson* claim.  Given Beeman's heavy reliance on *Descamps* in support of his motion, the district court's conclusion on that point is understandable.  Nevertheless, Beeman's motion did allege that, Georgia aggravated assault, which was one of his three qualifying ACCA convictions, "historically qualified as an ACCA predicate under [the ACCA]'s residual clause," and that "in recent years, the Eleventh Circuit has been using the residual clause as a default home for many state statutes that might otherwise have been counted under the elements or enumerated crimes clauses."  He also filed his motion 19 days before the one-year anniversary of the *Johnson* decision.  *See* 28 U.S.C. § 2255(f)(3) ("The limitation period shall run from . . . the date on which the right asserted was initially recognized by the Supreme Court . . . .").  Under the circumstances, the motion said enough to assert a *Johnson* claim.

10

Regardless of the ground stated in the district court's order or judgment, "[w]e may affirm on any ground supported by the record." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016). In this case, the record makes clear that the district court's dismissal of the § 2255 motion was the correct result as to the *Johnson* claim because—although timely raised—Beeman has not carried his burden of proving that claim on the merits. He did not request an evidentiary hearing in the district court, and he has not suggested in this Court that a remand for an evidentiary hearing would do him any good. Instead, he has chosen to proceed on the basis of the record as it now exists, and we consider his *Johnson* claim on that record.

## B. The Merits

To prove a *Johnson* claim, a movant must establish that his sentence enhancement "turn[ed] on the validity of the residual clause." In other words, he must show that the clause actually adversely affected the sentence he received. *In re Thomas*, 823 F.3d 1345, 1349 (11th Cir. 2016).[1] Only if the movant would not have been sentenced as an armed career criminal absent the existence of the residual clause is there a *Johnson* violation. That will be the case only (1) if the

---

[1] It makes no difference that *Thomas* was decided in the context of a prisoner's application for certification to file a second or successive § 2255 motion. The *Thomas* decision held that an applicant could not make even a prima facie showing of a *Johnson* claim if the *Johnson* decision did not affect his sentence. An applicant who cannot make even a prima facie showing that his § 2255 motion contains a *Johnson* claim will necessarily be unable to shoulder his burden of proving that he is actually entitled to relief under the *Johnson* decision.

sentencing court relied solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or elements clause (neither of which were called into question by *Johnson*) to qualify a prior conviction as a violent felony, and (2) if there were not at least three other prior convictions that could have qualified under either of those two clauses as a violent felony, or as a serious drug offense.

Critical to our decision on the merits issue in this case is the burden of proof and persuasion. The Government contends that a § 2255 movant bears the burden of proving that his sentencing enhancement was imposed because the sentencing court used the residual clause. Beeman argues that if it is merely possible that the court relied on that clause to enhance the sentence, then he has met his burden.[2] We conclude, and hold, that, like any other § 2255 movant, a *Johnson* § 2255 claimant must prove his claim.[3] To prove a *Johnson* claim, the movant must show that—more likely than not—it was use of the residual clause that led to the sentencing court's enhancement of his sentence. If it is just as likely that the

[2] Actually, Beeman puts it more strongly. He says that unless the record affirmatively shows that the district court relied on a clause other than the residual clause, we are required to conclude that it was the residual clause on which the enhancement was based.

[3] Our Court has previously stated in dicta that a *Johnson* movant does bear the burden of proof, as argued by the Government. *See In re Moore*, 830 F.3d 1268, 1272–73 (11th Cir. 2016). In a subsequent opinion, the Court endorsed in dicta the position now advocated by Beeman that a movant must merely show the possibility that the court relied on the residual clause to enhance the sentence. *See In re Chance*, 831 F.3d 1335, 1338–42 (11th Cir. 2016). As to the case before us now, we have not deferred to dicta. We have examined this issue afresh in reaching our conclusion based on what we see as traditional legal principles.

sentencing court relied on the elements or enumerated offenses clause, solely or as an alternative basis for the enhancement, then the movant has failed to show that his enhancement was due to use of the residual clause.

We rest our conclusion that a § 2255 movant must prove his *Johnson* claim on a long line of authority holding that a § 2255 movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015); *LeCroy v. United States*, 739 F.3d 1297, 1321 (11th Cir. 2014); *Barnes v. United States*, 579 F.2d 364, 366 (5th Cir. 1978) ("Under Section 2255, [the movant] had the burden of showing that he was entitled to relief."); *Coon v. United States*, 441 F.2d 279, 280 (5th Cir. 1971) ("A movant in a collateral attack upon a judgment has the burden to allege and prove facts which would entitle him to relief.").

And we are not alone in so holding. *See United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010) ("[T]he district court must determine whether the [§ 2255 movant] has met his burden of showing that his sentence is unlawful on one of the specified grounds."); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978) ("In seeking collaterally to attack their convictions under section 2255, [movants] bear the burden of establishing by a preponderance of the evidence that they are entitled to relief."); *Zovluck v. United States*, 448 F.2d 339, 341 (2d Cir. 1971) (stating, in the context of an appeal from the denial of a § 2255 motion, that

"[t]here is no doubt but that appellant had the burden of proof"); *United States v. Trumblay*, 234 F.2d 273, 275 (7th Cir. 1956) ("On a motion to vacate, set aside or correct a sentence, a movant has the burden of proof."); *Taylor v. United States*, 229 F.2d 826, 832 (8th Cir. 1956) ("Because the statutory proceeding is a collateral attack upon the judgment of conviction, the burden is on the [movant] to establish a basis for relief under some one or more of the grounds set forth in [§ 2255].").

As to our own precedent requiring a § 2255 movant to prove his entitlement to relief, in the *Rivers* decision, we held that Rivers's "motion must . . . be denied" because he "[had] not met his burden of proof" where the only evidence he offered in support of his claim was testimony that the district court did not credit. 777 F.3d at 1318; *see also id.* at 1316.

Similarly, in the *LeCroy* case, the petitioner asserted that counsel was ineffective for failing to call an expert witness who could have presented mitigation evidence about his childhood. 739 F.3d at 1313–14. His attorneys had decided not to present the expert witness because they feared that if they did, the Government would conduct its own evaluation of him and present a rebuttal expert whose evidence could be damaging. *Id.* at 1321. LeCroy argued that his attorneys' "fear of a Government evaluation" was irrational and that they could have allowed the Government to conduct the evaluation, seen what it said, and then

decided whether to present the defense expert. *Id.* This Court explained that

LeCroy's argument:

> inverts the burden of proof, which on a § 2255 petition belongs to the
> petitioner. If LeCroy's claim is that a Government evaluation would
> have been less damaging than [his expert]'s evaluation—and that,
> accordingly, the defense team ought to have been more willing to roll
> the dice and see what the Government would come up with—then to
> carry that argument LeCroy would actually need to show that the
> Government evaluation would be favorable. Otherwise, LeCroy is
> asking us to disregard the burden of proof and speculate about what
> might have been, drawing an inference in his favor that the record
> simply does not support. Here, where LeCroy is either unwilling or
> unable to demonstrate that the Government's evaluation would *in fact*
> have been favorable—as opposed to conceivably being favorable—he
> has failed to carry his burden in showing prejudice.

*Id.* at 1321–22 (underlined emphasis added).

Our long line of decisions holding that a § 2255 movant must bear the

burden of proving his entitlement to relief makes sense. "[O]ne of the principal

functions of AEDPA was to ensure a greater degree of finality for convictions."

*Johnson v. United States*, 340 F.3d 1219, 1224 (11th Cir. 2003); *see also Jones v.*

*United States*, 304 F.3d 1035, 1039 (11th Cir. 2002) ("A fundamental purpose for

the AEDPA was to establish finality in post-conviction proceedings."). Even

before AEDPA, the Supreme Court had instructed us that "direct appeal is the

primary avenue for review of a conviction or sentence . . . . When the process of

direct review . . . comes to an end, a presumption of finality and legality attaches to

the conviction and sentence." *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S. Ct.

15

3383, 3391–92 (1983). Finality "is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Teague v. Lane*, 489 U.S. 288, 309, 109 S. Ct. 1060, 1074 (1989). Putting the burden of proof and persuasion on the Government in a § 2255 proceeding to show the absence of a constitutional violation or that an error had no effect on the judgment would undermine the presumption of finality that attaches at the end of the direct appeal process. It would go a long way toward creating a presumption of non-finality and undermine the important interests that finality protects.

In spite of all the above caselaw, Beeman contends that "[t]he rule must be this: A *Johnson* movant has met his burden to show that he has a right to § 2255 relief . . . unless the record affirmatively shows that the district court relied upon the ACCA's elements clause." He would, to borrow the language of our *LeCroy* decision, have us invert the burden of proof and persuasion by taking well-established principles developed in numerous decisions over the years and turning them entirely upside down. We have to do this, he urges, because district courts have never been required to say, and as a result have not always expressly stated, which of the ACCA's clauses they are relying on when finding that a conviction qualifies as a violent felony. As a result, Beeman argues, if we treat *Johnson* movants like every other § 2255 movant, and require them to shoulder their burden

16

of proof and persuasion, it is unlikely that many of these prisoners will succeed in showing they are due relief.

Even if we accept Beeman's factual premise about what sentencing records typically show or don't show, we reject his legal premise that the burden of proof and persuasion should be overhauled for the purpose of increasing the number of cases in which the movant prevails. The burden of proof and persuasion reflects longstanding and fundamental interests in finality. It is by application of the appropriate burden that the outcome of a case is supposed to be determined, not the other way around. This approach is as true with *Johnson* claims as with any other type of claim.

Nor are we persuaded by Beeman's argument that requiring a § 2255 movant raising a *Johnson* claim to carry his burden of proof and persuasion would make the outcome depend on the "fluke" of a district court having expressly stated which clause it was relying on. If true, that would be equally true whichever side bears the burden. It is no more arbitrary to have the movant lose in a § 2255 proceeding because of a silent record than to have the Government lose because of one. What would be arbitrary is to treat *Johnson* claimants differently than all other § 2255 movants claiming a constitutional violation.[4]

---

[4] We do not mean to imply that every sentencing record will lack sufficient evidence about whether the district court relied on the residual clause in finding that the defendant was an armed career criminal. Some sentencing records may contain direct evidence: comments or findings

17

Beeman concedes that there is nothing in the record suggesting that the district court relied on only the residual clause in sentencing him.  In his § 2255 motion, he stated in conclusory terms that the district court must have relied on the residual clause, but nothing in the record supports this argument; and Beeman has pointed to no precedent in 2009 holding, or otherwise making obvious, that a violation of Georgia's aggravated assault statute qualified as a violent felony only under the residual clause.[5]  Instead, citing to no authority, his motion merely asserts in general terms that "a Georgia conviction for aggravated assault . . . [has] historically qualified as an ACCA predicate under [the ACCA]'s residual clause."

---

by the sentencing judge indicating that the residual clause was relied on and was essential to application of the ACCA in that case.  Nor do we mean to suggest that there will not sometimes be sufficient circumstantial evidence to show the specific basis of the enhancement.  For example, there could be statements in the PSR, which were not objected to, recommending that the enumerated clause and the elements clause did not apply to the prior conviction in question and did not apply to other prior convictions that could have served to justify application of the ACCA.  Or the sentencing record may contain concessions by the prosecutor that those two other clauses do not apply to the conviction in question or others.  And there could be other circumstances on which a movant can rely; the above are but a few examples.  Each case must be judged on its own facts.

[5]  We note that Beeman has likewise pointed to no precedent since 2009 so holding.  But even if such precedent had been announced since Beeman's sentencing hearing, it would not answer the question before us.  What we must determine is a historical fact: was Beeman in 2009 sentenced solely per the residual clause?  And as noted, Beeman bears the burden of proving that historical fact.  Certainly, if the law was clear at the time of sentencing that only the residual clause would authorize a finding that the prior conviction was a violent felony, that circumstance would strongly point to a sentencing per the residual clause.  However, a sentencing court's decision today that Georgia aggravated assault no longer qualifies under present law as a violent felony under the elements clause (and thus could now qualify only under the defunct residual clause) would be a decision that casts very little light, if any, on the key question of historical fact here: whether in 2009 Beeman was, in fact, sentenced under the residual clause only.

18

Beeman—relying only on cases involving Florida burglary convictions—also contends that this Court has "been using the residual clause as a default home for many state statutes that might otherwise have been counted under the elements or enumerated crimes clauses."  These general observations, however, are not enough to carry his burden of establishing that he, in fact, was sentenced as an armed career criminal here solely because of the residual clause.

In his reply to the Government's answer to his § 2255 motion, Beeman conceded that it is unclear[6] from the record whether the sentencing court had relied on the residual clause or the elements clause, or both, in finding that his aggravated assault conviction qualified as a violent felony.  "Where, as here, the evidence does not clearly explain what happened . . . the party with the burden loses."  *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001); *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56, 126 S. Ct. 528, 533–34 (2005) (explaining that the term "burden of persuasion" means that the party with the burden "loses if the evidence is closely balanced"); *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378–79 (Fed. Cir. 2015) ("Failure to prove the matter as required by the

---

[6]  The "clear/unclear test" discussed in *In re Rogers*, 825 F.3d 1335 (11th Cir. 2016) is inapplicable here.  That test was established expressly as a means of making a preliminary determination about whether a habeas petitioner had made out a prima facie showing sufficient to warrant leave to file a second or successive section 2255 motion.  The "clear/unclear test" merely allows a defendant to bring a *Johnson* claim and the opportunity—at the merits stage—to produce evidence establishing that he was actually sentenced solely under the residual clause.  Here, Beeman has been permitted to raise his claim; but his lack of evidence has failed to satisfy his ultimate burden of proof.

19

applicable standard means that the party with the burden of persuasion loses on that point—thus, if the fact trier of the issue is left uncertain, the party with the burden loses.") (quotation marks omitted); *Lovell ex rel. Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 373 (9th Cir. 1996) ("In general, if the evidence is evenly balanced, such that a decision on the point cannot be made one way or the other, then the party with the burden of persuasion loses."); *Cuppett v. Duckworth*, 8 F.3d 1132, 1140 n.5 (7th Cir. 1993) ("A party with the burden of persuasion loses if he fails to meet that burden.").

Given this record, Beeman's *Johnson* claim was therefore due to be dismissed because he failed to carry his burden of proof.  Specifically, he failed to prove—that it was more likely than not—he in fact was sentenced as an armed career criminal under the residual clause.  Having failed to prove that but for the residual clause he would have received a different sentence, he cannot prevail. For that reason, we **AFFIRM**.

20

WILLIAMS, District Judge, Dissenting:

I agree with the majority that Beeman's *Johnson* claim is timely,[1] and that he unequivocally bears the burden of establishing his right to relief. I cannot agree, however, that he has failed to adequately demonstrate that he was sentenced under the residual clause of the Armed Career Criminal Act ("ACCA"), or that his claim is substantively without merit. Specifically, I do not believe that the merits of Beeman's timely *Johnson* claim can be properly assessed without reaching the question of whether his conviction for aggravated assault in Georgia qualifies as a proper predicate offense under the elements clause of the ACCA, an issue that was fully briefed and ripe for adjudication on this record.

Since the Supreme Court's decision in *Johnson*—or more specifically the pronouncement in *Welch* that *Johnson* would be retroactively applicable on collateral review—courts have reviewed a torrent of habeas petitions challenging sentences that relied on the mandatory minimums meted out pursuant to the ACCA. In each case, the same standard has been applied: First, the movant must show that he was sentenced under the now-invalidated residual clause of the

---

[1] I also agree with the majority's implicit rejection of the Government's arguments regarding procedural default or untimeliness under AEDPA, which would result in eligible defendants "remain[ing] imprisoned solely because [they] did not raise an argument on appeal that was foreclosed by Supreme Court precedent at the time—and would have been deemed frivolous." *Duhart v. United States*, No. 16-cv-61499- MARRA, 2016 WL 4720424, at *3 (S.D. Fla. Sept. 9, 2016); *see also West v. United States*, No. 16-cv-22459-KMW (S.D. Fla. Mar. 22, 2017); *Vasquez v. United States*, No. 16-cv-14247-JEM (S.D. Fla. Dec. 6, 2016), report and recommendation adopted, No. 16-cv-14247-JEM (S.D. Fla. Feb. 14, 2017).

ACCA. Second, the movant must show that he could not have been sentenced under any other portion of the statute, namely the elements clause and the enumerated clause. *See Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (clarifying that "[the] decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."). I agree that the burden of making this showing and demonstrating a right to relief rests squarely with the movant—here, Beeman. Upon a review of his motion and the record, however, I believe that Beeman has met that burden.

As an initial matter, the majority conflates Beeman's argument that he ***could not have been sentenced*** under the elements clause—made in the context of establishing his *Johnson* claim—with the argument that he ***was improperly sentenced*** under the elements clause—which would constitute an untimely *Descamps* claim. Specifically, the majority observes that Beeman's petition "focused largely on an argument that the 2013 *Descamps* decision meant that his Georgia conviction for aggravated assault could no longer qualify as a violent felony under the elements clause" and concludes that this "is obviously a *Descamps* claim."

This conclusion, however, ignores both the unambiguous statements presented in Beeman's habeas petition and the established standards of the courts for demonstrating a defendant's right to relief under *Johnson*. With regard to the

22

former, Beeman's motion in the district court opened with the following statement: "Mr. Beeman challenges his sentence on one ground: In light of *Johnson v. United States*, the 210-month prison sentences on Counts One and Four, each imposed under [the ACCA], are unlawful." The motion goes on to argue that "the ACCA's residual clause, the basis for Mr. Beeman's harsh, ACCA-enhanced sentence . . . is now extinct," and that Beeman is entitled to relief because, in light of that change in the law, he no longer has three qualifying predicate crimes under the remaining language of the ACCA.

As to existing precedent on this issue, it has been established in the context of second or successive habeas petitions that "when an applicant's 'claim implicates *Johnson*,' we must apply binding Supreme Court precedent such as *Descamps*, even if this precedent does not on its own establish 'an independent claim that is itself subject to the gatekeeping requirements [of 28 U.S.C. § 2255(h)]' . . . in determining whether a prior conviction would still support an enhanced ACCA sentence." *In re Rogers*, 825 F.3d 1335, 1339 (11th Cir. 2016); *see also In re Adams*, 825 F.3d 1283, 1286 (11th Cir. 2016) (distinguishing cases where "petitioners were forced to rely on *Descamps* as a standalone claim" from cases where *Johnson* is implicated because "the sentencing court may have relied on the residual clause," and finding in the latter situation that "the ambiguity surrounding the sentencing court's decision requires us to look to the text of the

relevant statutes, [and] . . . guiding precedent, such as *Descamps*, to ensure we apply the correct meaning of the ACCA's words."). Similarly, establishing that a predicate offense could not qualify under the elements clause by applying the *Descamps* framework has been part and parcel of many district court determinations that a movant is entitled to relief under *Johnson*. *See, e.g., Wojcieszak v. United States*, 196 F. Supp. 3d 1319 (S.D. Fla. 2016); *Cochran v. United States*, No. 16-22506-CIV, 2017 WL 3084582 (S.D. Fla. June 16, 2017), report and recommendation adopted, No. 16-22506-CIV, 2017 WL 3085336 (S.D. Fla. July 19, 2017); *Givens v. United States*, No. 4:16-CV-1143 CAS, 2016 WL 7242162 (E.D. Mo. Dec. 15, 2016), appeal dismissed, No. 17-1199, 2017 WL 3273416 (8th Cir. Feb. 8, 2017); *Nichols v. United States*, No. 1:04-CR-68-TRM-CHS-1, 2016 WL 5921780 (E.D. Tenn. Oct. 11, 2016); *United States v. Wilson*, No. CR 96-0157 (ESH), 2017 WL 1383644 (D.D.C. Apr. 18, 2017); *Shabazz v. United States*, No. 3:16-CV-1083 (SRU), 2017 WL 27394 (D. Conn. Jan. 3, 2017); *Memoli v. United States*, No. 04CR140 (JSR), 2017 WL 3559190 (S.D.N.Y. July 11, 2017), report and recommendation adopted in part, No. 16-CV-4097 (JSR), 2017 WL 3504918 (S.D.N.Y. Aug. 15, 2017).

Though presented as a distinct "timeliness" holding, the majority's misapprehension of Beeman's *Descamps* arguments directly impacts the Court's analysis on the merits of his *Johnson* claim. As set out above, in order to prevail

24

on a *Johnson* claim, a movant must first establish that he was sentenced under the residual clause, and then must show that his predicate crimes could not qualify under any other portion of the ACCA.  But precluding discussion of *Descamps* in support of a *Johnson* motion contrives an issue with regard to both of these required showings.  As to the first prong, it forecloses an avenue of evidentiary support that, in many instances, could conclusively demonstrate a sentencing court's reliance on the now-defunct residual clause.  As to the second, it creates a standard under which the movant must establish that his predicate crimes could not qualify under any remaining clause of the ACCA, without allowing him to argue that his predicate crimes do not qualify under the elements clause based on binding Supreme Court precedent.[2]

The case at hand is illustrative of this conflict, particularly with regard to the first prong of *Johnson*.  By artificially delineating what constitutes a *Johnson* argument—and by disposing of Beeman's petition without reaching the second required showing for success on a *Johnson* claim—the majority elides all of Beeman's elements-clause arguments from their *Johnson* analysis, leaving Beeman with "insufficient" assertions regarding the sentencing court's reliance on the residual clause, which the majority peremptorily rejects.  In so doing, the majority

---

[2] As the majority correctly points out, *Descamps* did not articulate a new rule of constitutional law, but rather "merely clarified existing precedent." *Mays v. United States*, 817 F.3d 728, 734 (11th Cir. 2016).  If that is the case, not only is Beeman permitted to rely on *Descamps* in arguing that he is entitled to *Johnson* relief, but he is, in fact, required to do so.

has set up a straw man regarding Beeman's *Johnson* arguments that they then proceed to knock down.

The majority opinion's discussion of the merits of Beeman's *Johnson* claim starts off on the right track. It accurately explains that, in order to obtain relief, Beeman must show that "(1) [] the sentencing court relied solely on the residual clause" and "(2) [] there were not at least three other prior convictions that could have qualified under [the elements or the enumerated] clauses as a violent felony, or as a serious drug offense." It goes on to discuss the appropriate burden of proof, and states that a movant must first demonstrate that it is "more likely than not" that he was sentenced under the residual clause in order to obtain relief under *Johnson*. Our paths diverge, however, on the question of how that standard may be met.

When approaching this question, I do not write on a blank slate. Previous decisions of this Court have posited a "clear/unclear" test that has been consistently applied when answering this precise question in the *Johnson* context on applications for leave to file a second or successive habeas petition. Under that test, *Johnson* is "implicated" when the sentencing court did not specify the statutory basis for the qualifying predicates and there is no precedent establishing that the predicates would qualify under one of the remaining ACCA clauses. *In re Rogers*, 825 F.3d 1335, 1339 (11th Cir. 2016) (citing, among others, *In re Adams*, 825 F.3d at 1284). In such circumstances, "courts must apply *Descamps* and other

binding Supreme Court precedent in determining whether a prior conviction would still support an enhanced ACCA sentence." *Id.* There is no logically sound justification—and none is offered by the majority—for discarding the clear/unclear paradigm and approaching a *Johnson* claim differently in the context of an initial habeas petition.[3] Indeed, many district courts across the country have adopted this approach in evaluating *Johnson* claims on initial habeas petitions with an unclear sentencing record. *See, e.g.*, *United States v. Booker*, No. 16-cv-1107, 2017 WL 829094, at *3 (D.D.C. Mar. 2, 2017) (noting that "[f]irst, judges are not required by law to state at sentencing whether they are relying on the residual clause or the elements clause. . . . [and] [s]econd, there was no practical reason for judges to make this distinction at sentencing prior to June 26, 2015, when the Supreme Court decided that the residual clause was void for vagueness."); *Burgess v. United States*, No. CR493-205, 2017 WL 1943988, at *3 n.9 (S.D. Ga. Apr. 27, 2017), report and recommendation adopted, No. CR493-205, 2017 WL 2834492 (S.D. Ga. June 29, 2017) ("Movant's burden is only to show that—absent a clear

---

[3] As applied in the "gatekeeping" context of a second or successive habeas petition, the purpose of the clear/unclear test is to permit a petitioner to prove a constitutional right to relief in a circumstance where "it necessarily is unclear whether the court relied on a constitutionally valid or a constitutionally invalid legal theory." *United States v. Geozos*, No. 17-35018, 2017 WL 3712155, at *4 (9th Cir. Aug. 29, 2017). That same inquiry is precisely the question that must be answered when ruling on the merits of a *Johnson* claim, given that a petitioner is only entitled to relief under that decision if he is able to prove that he was sentenced under a constitutionally infirm provision of the ACCA. As such, the previous reasoning of this Court in cases such as *In re Chance*, *In re Rogers*, *In re Adams*, and many others—as well as the decisions of the other courts cited *infra*—is both instructive and highly persuasive in deciding the issue before us.

27

record—the sentencing judge may have used the residual clause."); *United States v. James*, No. 06-20172-JWL, 2016 WL 3936495 (D. Kan. July 21, 2016); *United States v. Hamilton*, 235 F. Supp. 3d 1229 (N.D. Okla. 2017); *Williams v. United States*, No. 4:16CV00993 ERW, 2017 WL 895910 (E.D. Mo. Mar. 7, 2017); *Thrower v. United States*, 234 F. Supp. 3d 372 (E.D.N.Y. 2017); *United States v. Wolf*, No. 1:04-CR-347-1, 2016 WL 6433151 (M.D. Pa. Oct. 31, 2016); *United States v. Ballard*, No. CR 03-810, 2017 WL 2935725 (E.D. Pa. July 10, 2017); *Givens v. United States*, No. 4:16-CV-1143 CAS, 2016 WL 7242162 (E.D. Mo. Dec. 15, 2016), appeal dismissed, No. 17-1199, 2017 WL 3273416 (8th Cir. Feb. 8, 2017).

Even absent these decisions, however, it is clear that any alternative to this test—in other words, any standard under which an unclear sentencing record precludes relief under *Johnson*—would lead to unwarranted and inequitable results. In his briefs, and again at oral argument, Beeman offered the example from *In Re: Chance,* 831 F.3d 1335 (11th Cir. 2016), involving two defendants, sentenced on the same day, for the same offense, by the same judge, with the same ACCA predicates. Under the majority's rationale, one of the defendants could bring a *Johnson* claim because the judge specified that he was sentenced under the residual clause, but the other defendant could not, because the judge used no such language and made no specific reference to any ACCA sub-clause. Adopting the

28

approach of the majority and permitting this scenario to play out in our courts not only would be unfair, but also would nullify the retroactive effect of a change in the law pronounced by the Supreme Court.[4]  I can see no basis for predicating a defendant's right to relief on the precision of the verbiage employed by a judge, an attorney, or even a defendant himself at the time of sentencing, when the highest court has announced that "[t]he residual clause is invalid under *Johnson*, so it can no longer mandate or authorize any sentence."  *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).[5]  As such, it should "make[] no difference whether the sentencing judge used the words 'residual clause' or 'elements clause,' or some similar phrase"; courts should not "penalize a movant for a [sentencing] court's discretionary choice not to specify under which clause of Section 924(e)(2)(B) an offense qualified as a violent felony."  *United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017) (citing with approval *In re Chance*, 831 F.3d 1335); *see also United States v. Geozos*, No. 17-35018, 2017 WL 3712155 (9th  Cir. Aug. 29, 2017)

---

[4] *See also United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017) (acknowledging that such an approach "would result in 'selective application' of the new rule of constitutional law announced in *Johnson* [], violating 'the principle of treating similarly situated defendants the same.') (internal citations omitted).

[5] As this Court has recently observed, "[i]t is a safe operating assumption that when the Supreme Court articulates a standard, it actually means the words it has used to set out that standard. . .." *United States v. Eddy Wilmer Vail-Bailon*, No. 15-10351, 2017 WL 3667647 (11th Cir. Aug. 25, 2017).  In the case of *Johnson*, the plain language of the decision makes clear that relief under the holding is not predicated upon a specific finding at sentencing, but rather the absence of a constitutional basis for the sentence imposed.  *Welch*, 136 S. Ct. at 1265 ("*Johnson* establishes, in other words, that 'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause.").

29

(citing with approval *In re Chance*, 831 F.3d 1335).  If *Johnson* means that an inmate's [] companion conviction should not have served as [a predicate offense under the statute] . . . then the text of [the statute] no longer authorizes his sentence and his imprisonment is unlawful."  *In re Chance*, 831 F.3d at 1341; *see also Geozos*, 2017 WL 3712155 at *4 ("[W]hen it is unclear from the record whether the sentencing court relied on the residual clause, it necessarily is unclear whether the court relied on a constitutionally valid or a constitutionally invalid legal theory.").

To be sure, the inquiry does not end there.  When the sentencing record is inconclusive, a movant must still bear the burden of showing—either through direct or circumstantial evidence—that he was, in fact, sentenced under the residual clause.[6]  Indeed, Beeman has attempted to do just that by demonstrating that he could not possibly have been sentenced under any other clause of the ACCA.  The majority does not reach the question of whether this type of circumstantial evidence of reliance on the residual clause should be permitted because, as noted above, they improperly categorize these arguments as an

---

[6] I do not agree that "[a] *Johnson* movant has met his burden to show that he has a right to § 2255 relief . . . unless the record affirmatively shows that the district court relied upon the ACCA's elements clause."  App. Br. at 22.  Instead, I simply take the view that an "unclear" sentencing record is neither a bar to, nor sufficient for, success on the merits of a *Johnson* claim.

"untimely *Descamps* claim" and exclude them from the discussion of Beeman's *Johnson* claims.[7]

The majority characterizes this framework as implicating some order of "burden shifting" that would break from long-standing precedent regarding a movant's obligation to establish his entitlement to constitutional relief and allow unmeritorious claims to succeed. This is not the case. Under the clear/unclear rubric, an unclear record does not entitle a movant to relief. Instead, it permits a defendant to bring a *Johnson* claim and to adduce evidence that establishes, conclusively, that he was sentenced under the residual clause. Far from opening the jailhouse doors based on ambiguities in the record, this analysis simply gives potentially eligible defendants the opportunity to prove that they are entitled to relief where, as here, the sentencing documents and record transcripts are silent. Though it is true that the courts may have to address some unmeritorious petitions because of this rule, this cannot be the basis for precluding access to the courts and "permitting the criminal process to rest at a point where it ought properly never to repose." *Mackey v. United States*, 401 U.S. 667, 693 (opinion of Harlan, J.).

In a case like this, where a movant attempts to satisfy the first prong of the *Johnson* inquiry through circumstantial evidence by demonstrating that he could not have been properly sentenced under any other portion of the statute, the first

---

[7] They do, however, clarify that either direct or circumstantial evidence could be used for this purpose. *See* Maj. Op. n.4.

and second prongs for success on the merits coalesce into a single inquiry. The fact that a single showing satisfies both requirements for *Johnson* relief, however, in no way diminishes the evidentiary burden of a movant or otherwise shifts that burden to the Government. Again, Beeman must prove that it was more likely than not that he was sentenced under the residual clause in order to succeed on his *Johnson* claim. I believe that Beeman has done so by demonstrating that he could not have been sentenced under any other clause of the ACCA. Because it is uncontested that Beeman does not qualify under the enumerated clause, and because there are only two other ways to qualify as a career offender under the ACCA, disproving one is necessarily proof of the other. *See In Re Chance*, 831 F.3d at 1340. Beeman's showing that he *could not* have been convicted under the elements clause of the ACCA[8] is therefore proof of both requirements for success on the merits of a *Johnson* claim: first, that he was sentenced under the residual clause, and second, that his predicate offenses could not qualify under the ACCA absent that provision. I can ascertain no basis upon which to exclude this type of circumstantial evidence in evaluating a movant's habeas petition, and, as noted

---

[8] Since the majority finds that Beeman has not adequately established that he was sentenced under the residual clause, they do not address the question of whether his predicate offense of aggravated assault in Georgia could qualify him for an ACCA sentence under the language of the elements clause. As noted at the outset, this question was fully briefed by both Parties, who agree that the modified categorical approach is the proper standard here. Applying that standard to the Georgia statute, Beeman's aggravated assault predicate likely would not qualify as a crime of violence under the elements clause.

32

above, believe that doing so would create an unjustifiable procedural bar based solely on the manner in which a movant's sentence was pronounced.

I do not take issue with the importance of finality of judgments in our legal system or the importance of efficiency in the apportionment of judicial resources wherever possible. But the vindication of constitutional rights must be of paramount importance in any decisions that impact access to the courts. In deciding to make *Johnson* retroactively applicable, the Supreme Court considered these conflicting interests, and concluded that "where the conviction or sentence in fact is not authorized by substantive law, then finality interests are at their weakest." *Welch*, 136 S. Ct. at 1266. Accordingly, while I understand the majority's desire to identify a bright-line rule through which unmeritorious *Johnson* claims can be culled without engaging in a predicate-by-predicate determination of what crimes still qualify under the ACCA, I cannot agree to a standard that excludes petitioners because the process of evaluation is particularly laborious. I fear that the practical effect of today's opinion is that many criminal defendants like Beeman who were, in fact, sentenced under a constitutionally infirm statute will be denied their right to seek the relief to which they may very well be entitled by the holdings of the Supreme Court. For that reason, I respectfully dissent.

33